1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                          EASTERN DISTRICT OF CALIFORNIA

8

GENGHIS KHAN ALI STEVENSON,              CASE NO. 1:11-cv-00720-SKO PC

9
                       Plaintiff,        SECOND SCREENING ORDER DISMISSING
10                                       ACTION FOR FAILURE TO STATE ANY
        v.                               CLAIMS UNDER SECTION 1983, WITHOUT
11                                       PREJUDICE AS TO DUE PROCESS CLAIM
DERRAL G. ADAMS, et al.,                 BARRED BY FAVORABLE TERMINATION
12                                       RULE AND WITH PREJUDICE AS TO ALL
                       Defendants.       OTHER CLAIMS
13
                                         (Doc. 8)
14
                                         ORDER THAT DISMISSAL IS SUBJECT
15                                       TO 28 U.S.C. § 1915(G)

16 _____/

17                          **Second Screening Order**

18 **I.     Screening Requirement and Standard**

19         Plaintiff Genghis Khan Ali Stevenson, a state prisoner proceeding pro se and in forma

20 pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on May 5, 2011.  On March 21,

21 2012, the Court screening Plaintiff's complaint and dismissed it, with leave to amend, for failure to

22 state any claims.  On April 25, 2012, Plaintiff filed an amended complaint.

23         The Court is required to screen complaints brought by prisoners seeking relief against a

24 governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).  The

25 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

26 "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

27 monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

28 "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

                                        1

1  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

2  claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

3      A complaint must contain "a short and plain statement of the claim showing that the pleader

4  is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

5  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

6  do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic

7  Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to

8  indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009)

9  (internal quotation marks and citation omitted).  While factual allegations are accepted as true, legal

10  conclusions are not.  Iqbal, 556 U.S. at 678.

11      While prisoners proceeding pro se in civil rights actions are still entitled to have their

12  pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is

13  now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive

14  screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to

15  allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged,

16  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969

17  (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere

18  consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678

19  (quotation marks omitted); Moss, 572 F.3d at 969.

20  **II.    Discussion**

21      Plaintiff, who is currently incarcerated at Kern Valley State Prison in Delano, California,

22  brings this action against Correctional Sergeants J. P. Prudhel and M. Drew; Associate Warden M.

23  Jennings; Chief Deputy Warden R. Davis; and Correctional Officers P. O. Deochoa, I. Bryant, E.

24  Lara, and P. Patterson for violating his constitutional rights in 2009 when he was at California State

25  Prison-Corcoran.  Plaintiff seeks damages, declaratory relief, and injunctive relief.

26

27

28

A.     **Claim One**[1]

1.     **Allegations**

Plaintiff alleges that on May 11, 2009, between 9:30 a.m. and 10:30 a.m., he was assigned inmate Desouza as a cellmate by Officer Cavazos, an assignment approved by Sergeant Acosta.  A workshift change occurred and Plaintiff asked Defendant Deochoa, who was preparing for showers, when inmate Desouza was coming.  Defendant Deochoa said there was a Mexican guy in a holding cage and then left.  Defendant Deochoa returned a few minutes later, told Plaintiff to cuff up, and escorted him to a holding cage opposite of inmate Desouza.

Plaintiff asked inmate Desouza what was going on and Desouza said he had been in the holding cage since that morning.  Defendant Deochoa asked Desouza if he had met Plaintiff and if he knew Plaintiff from somewhere.  Meanwhile, Defendant Deochoa had appeared with all of Plaintiff's personal property.  Plaintiff asked what was going on and what Defendant was doing with his property.  Defendant Deochoa said that since Plaintiff had refused a cellmate and the two of them were not going to cell up, Plaintiff was going to sleep in the holding cage because there were no open cells.  Plaintiff said that was wrong and asked to speak to a sergeant.  Defendant Deochoa got Defendant Prudhel, who said that Plaintiff had refused a cellmate and he did not want hear any verbal complaints, and that Plaintiff's property was going to be confiscated.  Defendant Prudhel said Plaintiff would sleep on the floor of the holding cage and inmate Desouza would get Plaintiff's cell.

Plaintiff alleges that he was placed in the holding cage around approximately 2:30 p.m. and remained there for around twenty-four hours.  Plaintiff alleges that he was subjected to "overnight air condition, cold freeze area nothing but a t-shirt, boxer and pair of socks."  (Amend. Comp., p. 4.)  Plaintiff alleges he was hungry because he was not fed dinner, he was denied access to water and use of the restroom, and he was deprived of sleep and bitten by insects.

Plaintiff alleges that his placement in the holding cage is called "cage therapy," and it constitutes cruel and unusual punishment, in violation of the Eighth Amendment.  (Id.) Plaintiff also

---

[1] Plaintiff sets forth three sets of events, identified as Claims One through Three, which give rise to multiple legal claims.

1   alleges that it violated the Equal Protection Clause because no other individuals under the same

2   circumstances would be subjected to the same treatment, and the confiscation of his personal

3   property without a hearing violated the Due Process Clause.  Finally, Plaintiff alleges that as a result

4   of his property confiscation, which lasted between May 11, 2009, and June 8, 2009, he missed the

5   due date for filing his opposition to a motion for summary judgment, which was June 1, 2009.

6                    **2.      Eighth Amendment**

7                         **a.      Legal Standard**

8          The Eighth Amendment protects prisoners from inhumane conditions of confinement.

9   Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  "[R]outine discomfort inherent in the

10  prison setting" does not rise to the level of a constitutional violation.  Johnson v. Lewis, 217 F.3d

11  726, 731 (9th Cir. 2000).  Rather, extreme deprivations are required to make out a conditions of

12  confinement claim, and only those deprivations denying the minimal civilized measure of life's

13  necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer v.

14  Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct.

15  995 (1992).  In order to state a claim, a prisoner must allege facts sufficient to support a claim that

16  prison officials knew of and disregarded a substantial risk of serious harm to him.  E.g., Farmer, 511

17  U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Richardson v. Runnels, 594

18  F.3d 666, 672 (9th Cir. 2010).

19                         **b.      Objective Element**

20         The Court finds that Plaintiff's allegations are insufficient to state an Eighth Amendment

21  claim.  As previously documented in the first screening order, Plaintiff was housed in a prison in the

22  Central Valley of California in mid-May.  Plaintiff's claim that he was subjected to freezing

23  temperatures overnight is necessarily implausible at best.  To the extent that the building was air

24  conditioned and Plaintiff was not as comfortable overnight as he could have been, this is the sort of

25  short-term discomfort which does not support an Eighth Amendment violation.  See Johnson, 217

26  F.3d at (inmates kept outside overnight in December in 22-degree weather); Keenan v. Hall, 83 F.3d

27  1083, 1091 (9th Cir. 1996) (allegation that temperatures were "well above" or "well below" room

28  temperature not sufficient to support Eighth Amendment claim).  Similarly, missing one meal will

                                            4

1  not support a claim.  See Foster v. Runnels, 554 F.3d 807, 812-13 (9th Cir. 2009) (inmate denied 16

2  meals in 23 days); LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993) (food must be adequate

3  to maintain health).

4          Plaintiff also alleges that he was denied access to water and to the restroom.  The fact that

5  Plaintiff was held for twenty-four hours in a cell that lacked a toilet and running water does not

6  support a claim.  Plaintiff's exhibits, which include his own inmate appeal, indicate he was afforded

7  opportunities to have water and to use the restroom.  (Ex. A, court record p. 10.)  In the absence of

8  any specific facts that would support a reasonable inference that Plaintiff suffered dehydration, was

9  not provided with any means to void his waste, and/or was otherwise held in conditions so unsafe

10 or unsanitary that they violated the Eighth Amendment, no claim lies.  See Johnson, 217 F.3d at 730

11 (inmates held outdoors in August in 94-degree heat for four days and not provided water until well

12 into the second day or with toilet facilities, leading to some inmates urinating or defecating in their

13 clothing, which they were forced to continue wearing).

14         Finally, Plaintiff alleges he was bitten by insects.  There are insufficient facts to support a

15 plausible claim that Plaintiff, who was housed inside a building, somehow sustained so many insect

16 bites as to support an Eighth Amendment claim.  That Plaintiff may have sustained some insect bites

17 on his arms and legs does not support a claim.  (Ex. A, court record p. 10.)

18              **c.    Subjective Element**

19         Even if the Court were to assume that Plaintiff's allegations are somehow sufficient to meet

20 the objective component of an Eighth Amendment claim, Plaintiff has not linked anyone to specific

21 actions or omissions which constituted deliberate indifference.  While Plaintiff was left in the

22 holding cage by Defendants Deochoa and Prudhel on the afternoon of May 11, 2009, only those

23 individuals who knowingly disregarded a substantial risk of harm to Plaintiff's health or safety

24 relating to the specific conditions of which he is complaining may be held liable under section 1983.

25 ///

26 ///

27 ///

28

Farmer, 511 U.S. at 837.  There is no suggestion that Defendants Deochoa and Prudehl denied Plaintiff access to water or the restroom, or knew he was cold or being bitten by insects.[2]

### 3.    Due Process

The Due Process Clause of the Fourteenth Amendment of the United States Constitution protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  However, Plaintiff was not deprived of his property; it was returned to him approximately one month later after his transfer from the Security Housing Unit (SHU) to the Administrative Segregation Unit (ASU).  Further, Plaintiff is not entitled to a pre-deprivation hearing in a situation such as this, and his attempt to base a claim on the fact that he was not give a hearing prior to the removal of  his property from his cell for storage fails as a matter of law.  Wright v. Riveland, 219 F.3d 905, 918 (9th Cir. 2000) (citing Hudson v. Palmer, 468 U.S. 517, 532, 104 S.Ct. 3194 (1984)); Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994).

### 4.    Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agriculture, 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook

///

---

[2] It bears repeating that Plaintiff's inmate appeal belies any claim that he was denied water or access to the restrooms.

1  v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580,

2  592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

3          Although Plaintiff concludes that no one else in the same circumstance would have been

4  treated the way he was, Plaintiff's amended complaint is devoid of any facts supporting a claim that

5  he was intentionally treated differently than other similarly situated inmates.

6                      **5.    Denial of Access to the Courts**

7          Plaintiff has a constitutional right of access to the courts and prison officials may not actively

8  interfere with his right to litigate.  Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2011).

9  However, to state a viable claim for relief, Plaintiff must allege he suffered an actual injury, which

10 is actual prejudice with respect to contemplated or existing litigation.  Nevada Dep't of Corr. v.

11 Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing Lewis v. Casey, 518 U.S. 343, 348, 116 S.Ct.

12 2174 (1996)) (quotation marks omitted).

13         Here, Plaintiff alleges the deprivation of his property caused him to be unable to oppose a

14 motion for summary judgment.  However, Plaintiff may not fail to exercise due diligence in the

15 underlying action and then parlay his own lack of diligence into a claim.

16         In the case at issue, Stevenson v. Harmon, 3:07-cv-01619-W-NLS (S.D. Cal.), the defendants

17 filed a motion for summary judgment on January 29, 2009.[3]  On February 26, 2009, Plaintiff was

18 granted an extension of time to April 17, 2009, within which to file his opposition, and on April 27,

19 2009, Plaintiff was granted another extension of time to June 1, 2009, within which to file his

20 opposition.  Plaintiff now claims that his separation from his personal property between May 11,

21 2009, and June 8, 2009, caused him to be unable to file his opposition.

22         However, Plaintiff did not file a motion seeking an extension of time once he received his

23 property back on June 8, 2009, nor did Plaintiff filed a motion seeking an extension of time when

24 he received the court's order filed on June 19, 2009, in which the court vacated the hearing date for

25

26         [3] The Court takes judicial notice of the record in case number 3:07-cv-01619-W-NLS.  United States v.
27 Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

28

                                          7

1   the motion for summary judgment and specifically noted Plaintiff's failure to seek another extension

2   of the deadline.  The court did not issue its report and recommendation on the motion until July 30,

3   2009, and at no point during that period of time did Plaintiff seek any relief from the court.  Plaintiff

4   also failed to object to the report and recommendation, which was adopted and led to the entry of

5   judgment against Plaintiff.  Plaintiff appealed the judgment which was affirmed; the Ninth Circuit

6   also noted Plaintiff's failure to seek an extension of time.

7        Plaintiff may not sit back and do nothing in an underlying action and then be heard to claim

8   that it was not his own lack of diligence but the short month-long deprivation of his property which

9   caused him to be unable to oppose the motion.  Plaintiff had ample time to contact the district court

10  regarding additional time to oppose the motion for summary judgment but he failed to do so.  In as

11  much as Plaintiff has been unable to show he suffered any actual injury as the direct result of any

12  named Defendant's conduct, his claim fails.[4]

13        **B.    Claim Two**

14            **1.    Allegations**

15        Plaintiff filed an inmate appeal concerning the events on May 11, 2009, and he was

16  interviewed by Defendant Drew.  Plaintiff alleges that when he received the amended response to

17  his appeal through the mail, he realized that no investigation was conducted, even though Defendant

18  Drew told him during the interview that one would be conducted.  Plaintiff alleges that Defendant

19  Drew's determination that Plaintiff refused a cellmate and two inmates were housed in cell 45 was

20  false, as only inmate Desouza went into that cell.  Plaintiff also alleges that the cell he was placed

21  in after the "cage therapy" had been empty for two days prior to his placement in that cell.

22        Plaintiff alleges that he was denied a fair and equal grievance investigation and deprived of

23  the relief to which he was entitled, in violation of his rights under the Due Process and Equal

---

25        [4] Plaintiff also fails to link his purported inability to access his legal property to anyone specific.  That his
26  property was confiscated and stored on May 11, 2009, does not render Defendant Ochoa liable under section 1983
    for any and all subsequent events.  Plaintiff has made no showing that between May 11, 2009, and June 8, 2009, he
27  attempted to gain access his legal property or otherwise informed staff about a pending deadline, but was nonetheless
    hindered.

1  Protection Clauses.  Plaintiff alleges that Defendants Jennings and Davis also violated his rights by

2  "robo-signing" off on the appeal.  (Amend. Comp., p. 5.)

3  **2.  Due Process and Equal Protection Claims**

4  Plaintiff's allegations support neither a due process claim nor an equal protection claim.  The

5  existence of an inmate appeals process does not create a protected liberty interest upon which

6  Plaintiff may base a claim that he was denied a particular result or that the appeals process was

7  deficient, Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640

8  (9th Cir. 1988), and there is no support for a claim that Plaintiff was intentionally treated differently

9  than other similarly situated inmates, Engquist, 553 U.S. at 601-02.

10  **C.  Claim Three**

11  **1.  Allegations**

12  On May 22, 2009, Defendant Lara handed Plaintiff a Rules Violation Report (RVR) for

13  disobeying orders and refusing a cellmate, and he informed Plaintiff that he was Plaintiff's

14  investigative employee.  Defendant Castro was initially assigned as a staff assistant.  On June 7,

15  2009, Defendant Patterson was assigned as a staff assistant, and on June 8, 2009, Plaintiff was

16  informed by staff that his SHU term was over, he was being transferred, and he was going to be

17  housed in the ASU pending transfer.  Plaintiff asked about his property and he was told he would

18  get it in ASU.  Plaintiff alleges that this was odd because he had a pending RVR and inmates with

19  pending RVRs cannot be SHU "kick-outs." (Amend. Comp., p. 6.)

20  Defendants Bryant and Deochoa approached Plaintiff's cell in ASU and Defendant Bryant

21  asked if he was ready for his hearing.  Plaintiff asked where his staff assistant, Defendant Patterson,

22  was and said he had to be there.  Defendants agreed and walked off.

23  On June 15, 2009, Plaintiff was transferred to California State Prison-Calipatria for court

24  proceedings and he returned to California State Prison-Corcoran on July 2, 2009.  On August 27,

25  2009, Plaintiff was transferred to California Substance Abuse Treatment Facility and State Prison,

26  and on September  2, 2009, Plaintiff received a final copy of the RVR disposition in the mail.

27  ///

28

Plaintiff alleges that the hearing never happened and his due process and equal protection rights were violated, and that the RVR was falsified to state that Plaintiff and Defendant Patterson were present for the hearing.  Plaintiff alleges that Defendant Patterson was not at the prison on the day of the purported hearing and he violated Plaintiff's rights by going along with the falsely documented hearing.  Plaintiff alleges that Defendant Lara violated his rights by failing in his duties as an investigative employee and falsely documenting that Plaintiff was given a final copy of the RVR on June 25, 2009, a date Plaintiff was not at the prison.

Plaintiff alleges that the disciplinary process and decision did not affect the length of his confinement, no penalty was imposed upon him, and he is not challenging any part of his confinement.  Plaintiff alleges that he was referred to the institutional classification committee, but he never appeared before it, as he was transferred.

## 2.   Due Process

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005).  To state a claim, Plaintiff must first identify the interest at stake. Wilkinson, 545 U.S. at 221.  Liberty interests may arise from the Due Process Clause or from state law.  Id.  The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, id. at 221-22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue, id. at 222-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995)) (quotation marks omitted).  Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Wilkinson, 545 U.S. at 222-23 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

If Plaintiff in fact suffered no adverse consequences as a result of the RVR disposition, he cannot show that he had a protected liberty at stake entitling to him procedural protections under

1   federal law.  Wilkinson, 545 U.S. at 221; Sandin, 515 U.S. at 484.  However, Plaintiff's exhibits

2   belie his claim that he suffered no adverse consequences.  Plaintiff lost various privileges, none of

3   which gives rise to a protected liberty interest; and Plaintiff lost time credits, despite his conclusory

4   denial regarding the length of his sentence.  (Amend. Comp., Ex. C., court record p. 37.)

5         It has long been established that state prisoners cannot challenge the fact or duration of their

6   confinement in a section 1983 action and their sole remedy lies in habeas corpus relief.  Wilkinson

7   v. Dotson, 544 U.S. 74, 78, 125 S.Ct. 1242 (2005).  Often referred to as the favorable termination

8   rule, this exception to section 1983's otherwise broad scope applies whenever state prisoners "seek

9   to invalidate the duration of their confinement - either directly through an injunction compelling

10  speedier release or *indirectly through a judicial determination that necessarily implies the*

11  *unlawfulness of the State's custody*."  Wilkinson, 544 U.S. at 81 (emphasis added).  Thus, "a state

12  prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages

13  or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or

14  internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity

15  of confinement or its duration."  Id. at 81-2.

16        A loss of time credits necessarily affects the length of Plaintiff's sentence, and a finding that

17  Plaintiff's due process rights were violated with respect to his disciplinary hearing would necessarily

18  imply the invalidity of the disposition and resulting credit loss.  Therefore, Plaintiff's due process

19  claim is barred.  Id. at 81-2.

20          **2.**   **Equal Protection**

21        Any claim that Plaintiff's rights under the Equal Protection Clause were violated vis a vis

22  his prison disciplinary hearing would also be barred by the favorable termination rule.  However,

23  there are no facts pled which would support a claim that Plaintiff was intentionally treated differently

24  than other similarly situated inmates and his equal protection claim shall therefore be dismissed with

25  prejudice.

26  ///

27  ///

28

**III.     Conclusion and Order**

The Court finds that Plaintiff's amended complaint fails to state any claims upon which relief may be granted under section 1983. Based on the nature of the deficiencies in Plaintiff's claims and Plaintiff's previous opportunity to amend to cure these deficiencies, the Court finds that further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, it is HEREBY ORDERED that:

1.     This action is dismissed for failure to state a claim upon which relief may be granted under section 1983 as follows:

   a.     Plaintiff's due process claim barred by the favorable termination rule is dismissed without prejudice; and

   b.     All other claims are dismissed with prejudice; and

2.     This dismissal is subject to the "three-strikes" provision set forth in 28 U.S.C. § 1915(g). Silva, 658 F.3d at 1098-99.

IT IS SO ORDERED.

**Dated:     November 6, 2012               /s/ Sheila K. Oberto**
                                        UNITED STATES MAGISTRATE JUDGE